UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

..................................................................X

ALISHA HARVEY,

                Plaintiffs,

      - against -

NYC HEALTH AND HOSPITALS
CORPORATION; and PHYSICIAN AFFILIATE
GROUP OF NEW YORK, P.C.,

                Defendants.

..................................................................X

                                **JURY TRIAL DEMANDED**

        Plaintiff Alisha Harvey, by and through her attorneys, Filippatos PLLC, hereby allege against Defendants New York City Health and Hospitals Corporation ("NYCHHC") and Physician Affiliate Group of New York, P.C. ("PAGNY") (together, "Defendants") as follows:

## ADMINISTRATIVE PREREQUISITES

1.       Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten days of its filing, thereby satisfying the notice requirements of this action.

2.       On June 8, 2022, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act, New York State Human Rights Law, and New York City Human Rights Law. On or about July 9, 2024, the EEOC subsequently issued Plaintiff a Notice of Right to Sue.

3.       Plaintiff brings her complaint within 90 days of the issuance of the Right to Sue.

4.       Plaintiff has complied with any and all other prerequisites to filing this action.

1

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court is proper under 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

7.      Plaintiff Alisha Harvey is a 51-year-old African-American woman residing in the State of New York, Suffolk County.

8.      Plaintiff is a former employee of Defendant NYC Health and Hospitals Corporation and Physician Affiliate Group of New York.

9.      At all times relevant hereto, Defendant NYCHHC was and is a domestic public benefit corporation company maintaining its principal place of business at 50 Water Street, New York, NY 10002.

10.     Upon information and belief, Defendant NYCHHC employs approximately 40,000 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

11.     At all times relevant hereto, Defendant PAGNY was and is a domestic public benefit corporation company maintaining its principal place of business at 55 West 125th Street, New York, NY 10029.

12.     Upon information and belief, Defendant PAGNY employs approximately 1,000 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which

Plaintiff is proceeding herein.

13.    At all times relevant hereto, Plaintiff was an employee of Defendants as they exercised coordinated control over the terms and conditions of Plaintiff's employment, thereby constituting joint employers.

## FACTS

### I.    Ms. Harvey is Hired by Corizon Health, Inc., Which is Subsequently Acquired by PAGNY

14.    In or around September 2013, Plaintiff joined Corizon Health, Inc. ("Corizon") as a Mental Health Treatment Aide at Rikers Island. In this role, Plaintiff was responsible for working with the inmate population, performing de-escalating interventions, therapeutic observations, and conducting group and individual supervision in collaboration with an interdisciplinary team. She was also tasked with identifying inmate/patient characteristics and environmental variables that may trigger agitated behaviors and communicating such to the treatment team to develop interventions. She often facilitated groups and activities in areas such as anger management, mental illness and stigma, medication compliance, life skills, and recidivism prevention. She also performed one-on-one suicide watches and reported her daily observations, interactions, and patient activity in an electronic health record system. Plaintiff also trained and supervised new employees on an ongoing basis.

15.    In or around January 2016, Corizon was acquired by Defendant PAGNY, who then became Plaintiff's direct employer. Defendant PAGNY healthcare professionals are contracted by Defendant NYCHHC to provide medical care to incarcerated patients at Rikers.

### II.    Defendants Fail to Address Plaintiff's Complaints Concerning Inmates Verbally and Physically Assaulting Her

16.    Plaintiff's initial two years of employment by Defendants went smoothly.

17.    However, in 2016, things changed drastically for the worse when she was sexually

3

harassed at work by inmates and Defendants took no remedial action.

18.    In 2016, an inmate/patient ("Inmate 1") began a campaign of sexual harassment against Plaintiff that was condoned by Defendants' knowledge and inaction.

19.    In doing so, the Inmate 1 used derogatory, sexually explicit language to threaten and humiliate Plaintiff. Such statements included, but were not limited to, the following:

      a.    Threatening Plaintiff with rape when he said: "if I was on the street, I would take it."

      b.    On or about December 20, 2016, exposing and thrusting his bare genitals at Plaintiff while saying "you know you want to," and then threatening to find out where Plaintiff lived after she recoiled in disgust.

20.    Plaintiff complained via email to the Operations Distribution listserv about the harassment that she endured—the listserv included approximately 40 individuals at the time.

21.    Plaintiff's supervisors were on the listserv and the listserv was regularly used to address workplace concerns.

22.    Plaintiff did not receive a response from anyone in upper management, and Defendants took no action.

23.    At or around the same time, emboldened by the apparent lack of consequences for the Inmate 1's sexually harassing behavior towards Plaintiff, another inmate ("Inmate 2") began a campaign of sexual harassment that continued and worsened to the point of becoming physically violent. Such worsening behavior includes, but is not limited to, the following:

      a.    In or around spring of 2017, entering an office where Plaintiff was alone and seated at a desk, pinning Plaintiff to

her desk, holding a bag filled with feces, and threatening to

smear it on her;

b. On or about August 17, 2017, entering Plaintiff's office,
punching her in her face several times and with such force
that Plaintiff lost consciousness before security officers
arrived and subdued Inmate 2.

24. Plaintiff reported both incidents to Human Resources, once again to no avail.

25. After the 2017 assaults and lack of any attempt to provide her with a reasonably
safe working environment, Plaintiff requested leave under the Family and Medical Leave Act
("FMLA").

26. Plaintiff's request was denied because she had recently transitioned from being a
full-time employee to being a part-time employee.

27. Following Plaintiff's complaints about Inmate 1 and Inmate 2, they continued to be
housed in Plaintiff's unit with no advance warning, including, but not limited to, on the following
dates:

a) March 17 through March 27, 2017;

b) April 18 through August 10, 2017;

c) December 6, 2017 through March 8, 2018;

d) May 13 through May 30, 2019;

e) August 6, 2020 through May 24, 2021; and

f) July 22, 2021 through January 11, 2022.

28. Plaintiff began taking time off because Defendants gave her no other option to
avoid interacting with Inmate 2.

29.     In early 2020, as a result of Plaintiff taking time off to avoid running into Inmate 2, Defendants penalized Plaintiff by writing her up for "egregious callouts."

30.     At no point did Defendant NYCHHC or Defendant PAGNY make any effort to provide Plaintiff with a safe working environment. At no point did Defendant NYCHHC or Defendant PAGNY make any effort to keep Inmate 2 separated from Plaintiff. And, at no point did Defendant NYCHHC or Defendant PAGNY provide Plaintiff with any warning when Inmate 2 returned to her unit. Each time, Plaintiff learned of Inmate 2's return when he suddenly appeared and began verbally threatening her.

### III.    Plaintiff was Sexually Assaulted by Her Co-Worker and Placed on an Unpaid Suspension When She Complained About the Attack

31.     Plaintiff ended a brief, consensual relationship with her coworker, Mental Health Treatment Aide Edward Reece ("Mr. Reece") in or around 2016 and worked together without incident until August 15, 2021.

32.     On or about August 15, 2021, Mr. Reece violently assaulted and sexually assaulted plaintiff in the workplace locker room.

33.     Plaintiff was sitting on a chair to change her shoes when Mr. Reece approached her, yelling at her, unprovoked. Plaintiff's attempts to deescalate were unsuccessful.

34.     Mr. Reece stood over her, grabbed her by the neck, and squeezed her throat, rendering Plaintiff immobile. In fear for her life, Plaintiff pleaded with Mr. Reece to let her go, and tried unsuccessfully to pry his hands from her throat so that she could breathe and flee.

35.     Mr. Reece then punched Plaintiff in her stomach and grabbed and twisted her left nipple. As Mr. Reese sexually assaulted Plaintiff, he taunted and berated her. Mr. Reece appeared to enjoy inflicting such pain on Plaintiff as he said: "that hurts, I know it hurts." A colleague pulled Mr. Reece off Plaintiff, at which point Plaintiff ran out of locker room to get as far away from her

6

assailant as possible.

36.     Later that same day, Plaintiff reported this violent workplace assault to Clinical Supervisor, Giuseppe Sotille ("Dr. Sotille") in person, and then called Mental Health Treatment Aide Supervisor and Assistant Director of Hospitals, Lawrence Scott, III, ("Mr. Scott").

37.     In response to her complaint of sexual assault, Dr. Sotille and Mr. Scott directed Plaintiff to report the incident to the Operations Distribution list by filling out an incident report. Complying with this supervisory directive, Plaintiff requested an incident report from the Operations and copied her Clinical Supervisor, Mr. Scott, as well as Nargus Harounzadehm, Nikol Stancato, and Ricky Parasam. However, Plaintiff never received an incident report in response and, instead, had to procure one on her own with no assistance.

38.     The next day, on August 16, 2021, Plaintiff received a response from Mr. Parasam asking her to call him.

39.     That same day, Plaintiff received a "Suspension Notification" from the Defendant PAGNY Director of Labor & Employee Relations, Jennifer Hobbs ("Ms. Hobbs"). Ms. Hobbs informed Plaintiff that she was suspended and would be paid only for days that she could cover with her accrued leave.

40.     However, Plaintiff's leave balance had been depleted because she utilized her paid time off to avoid the inmates that were harassing her due to Defendants' inaction.

41.     Upon information and belief, however, Mr. Reece was fully compensated for his suspension while Ms. Hobbs investigated the incident.

42.     On or about August 17, 2021, Plaintiff returned Mr. Parasam's call but he never called her back.

43.     On or about September 3, 2021, Ms. Hobbs interviewed Plaintiff as a part of

Defendants' so-called investigation into the assault. During the approximately 15-minute interview, Ms. Hobbs asked Plaintiff a series of questions focused on her prior relationship with Mr. Reese rather than his violent assault.

44.     Ms. Hobbs then suggested that Plaintiff reach out to the employee helpline. Ms. Hobbs assured Plaintiff that the investigation would be concluded within a week. At no point did Ms. Hobbs mention or imply that Plaintiff had somehow violated Defendants' policies or procedures by being the victim of a co-worker's violent sexual assault in the workplace.

45.     On or about September 15, 2021, this was exactly the position Defendants took when suspending Plaintiff. The suspension letter stated: "Based upon the results of the aforementioned investigation, our office has determined that you engaged in inappropriate behavior with your colleague that is not in line with PAGNY's expectations. As a result, you are being disciplined with a final warning with a suspension."

46.     The suspension letter provided no further explanation, but directed Plaintiff to "reacquaint" herself with certain policies and return to work on Saturday, September 18, 2021.

47.     Throughout her time with the Company, Plaintiff never received an employee handbook or document indicating the Company policies

48.     The suspension letter further informed Plaintiff that she was, "restricted from entering MODILA [the specific location where Mr. Reece violently sexually assaulted her] without prior authorization from your supervisor."

### IV.     Plaintiff's Formal Complaints Regarding Mr. Reece's Unlawful Conduct Came to No Avail, but the Onslaught of Discriminatory and Retaliatory Conduct Against Plaintiff by Defendants Continued Unabated

49.     On or about September 18, 2021, Plaintiff returned to work to find out that while she was restricted from entering the MODILA locker room without prior authorization from her

supervisor, Mr. Reece was not subject to the same restriction. Perhaps even worse, he was free to work within her vicinity without any restrictions.

50.     On or about December 18, 2021, Plaintiff again followed up with Mr. Parasam to see if anything was being done about her complaint, but he inexplicably claimed there was no incident report on file. Feeling unheard and unprotected, Plaintiff filed a criminal complaint with the New York City Police Department ("NYPD") about Mr. Reece's assault. Since then, Ms. Harvey, along with several other witnesses, have been interviewed by Detective Dwayne Leeshue.

51.     On or about May 17, 2022, the NYPD requested that Mr. Reece turn himself in on his own accord in lieu of issuing a warrant for his arrest.

52.     On or about November 18, 2022, the Bronx County District Attorney's Office filed criminal charges against Mr. Reece. The charges included forcible touching, assault in the third degree, and harassment in the second degree.

53.     On or about April 10, 2023, Mr. Reece entered a plea of no contest for the above-mentioned conduct and charges.

54.     As a result of Defendants' unlawful conduct, omissions, and condoning the violent, harassing, and discriminatory behavior of its clients and employees, Plaintiff suffered and continues to suffer mental anguish and severe emotional and psychological distress necessitating ongoing treatment.

55.     As a result of Defendants' unlawful conduct, Plaintiff has suffered substantial damages, including but not limited to economic and pecuniary losses, severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

56.     Adding insult to injury, Plaintiff's colleagues blamed her for attempting to destroy

Mr. Reece's career.

**V.    Defendants Onslaught of Discriminatory and Retaliatory Continues Culminated with Plaintiff's Retaliatory Termination**

57.    Plaintiff had no choice but to take leave to avoid interacting with her attacker, as Defendants would not work with her to provide her a safe working environment. Plaintiff took protected leave in 2023, and again in 2024.

58.    Upon her return from leave in 2024, Plaintiff requested a schedule modification to enable her to care for her father, who could not be left alone for medical reasons. Her father's caretaker's schedule was set by insurance, and there was a gap between when the caretaker's shift ended, and when Plaintiff's shift ended. Rather than work with Plaintiff to arrive at a workable solution, Defendants denied her request, providing no alternative. This left Plaintiff no option but to call out early so that her father would not be left unattended when his caretaker's shifts ended.

59.    Upon information and belief, Defendants were flexible with other employees who needed to care for family members who had medical needs.

60.    Continuing their discriminatory and retaliatory behavior, Defendant PAGNY gave Plaintiff verbal warnings for calling out early. On or about August 16, 2024, Defendant PAGNY held a disciplinary meeting with Plaintiff during which time they continued refusing to provide her with a modified schedule to care for her father.

61.    On or about September 16, 2024, Plaintiff received a written notice to meet with CHS-PAGNY Labor Relations at the CHS Assistance Center on Friday, September 20, 2024, at 11:00 am. On or about September 20, 2024, Defendants campaign of harassment, discrimination, and retaliation culminated with the termination of Plaintiff's employment.

62.    During her time as employee of Defendants, Plaintiff was forced to work with inmates and a coworker that subjected her to egregious sexual harassment. All the while, up until

her termination, Defendants refused to take adequate measures to provide Plaintiff with a safe workplace.

**FIRST CAUSE OF ACTION**
**Discrimination in Violation of Title VII**

63.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

64.    Based on the facts alleged herein, Defendants have engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff and subjecting her to gender discrimination, sexual harassment, and a hostile work environment because of her gender/sex (female).

65.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

66.    Accordingly, as a result of Defendants' unlawful conduct set forth herein, Plaintiff has been damaged and is entitled to maximum compensation available to her under the law, including, but not limited to, punitive damages.

**SECOND CAUSE OF ACTION**
**Retaliation in Violation of Title VII**

67.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

68.    Based on the facts alleged herein, Defendants have engaged in unlawful employment practices prohibited by Title VII by retaliating against Plaintiff for engaging in protected activity when she complained of physical and sexual assaults and harassment and

11

continued subjecting her to a hostile work environment because of her gender/sex (female).

69.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

70.    Accordingly, as a result of Defendants PPD's unlawful conduct set forth herein, Plaintiff has been damaged and is entitled to maximum compensation available to him under the law, including, but not limited to, punitive damages.

**THIRD CAUSE OF ACTION**
**Discrimination In Violation of the NYSHRL**

71.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs of the Complaint as if fully set forth herein.

72.    By the actions detailed above, among others, Defendants have discriminated against Plaintiff in violation of the NYSHRL by, inter alia, denying her the equal terms and conditions of employment because of her gender (female).

73.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of monetary damages and other relief, in addition to reasonable attorneys' fees and expenses.

74.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and severe emotional distress, for which she is entitled to an award of monetary damages and other relief.

75.    Defendants' unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to punitive damages.

**FOURTH CAUSE OF ACTION**
**Retaliation In Violation of the NYSHRL**

76.    Plaintiffs hereby repeats and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

77.    By the actions detailed above, among others, Defendants have retaliated against Plaintiffs based on their protected activities in violation of the NYSHRL, including, most recently, terminating Plaintiffs employment.

78.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm, for which they are entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

79.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiffs have suffered, and continue to suffer, mental anguish and severe emotional distress, for which they are entitled to an award of damages.

80.    Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiffs are entitled to an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**Discrimination in Violation of the NYCHRL**

81.    Plaintiffs hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as if fully set forth herein.

82.    New York City Administrative Code § 8-107 provides that:

> 1.     It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment.

83.     Based on the events described above, Defendants have discriminated against Plaintiff Harvey on the basis of her gender in violation of the NYCHRL.

84.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including but not limited to, economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

85.     Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

86.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

87.     New York City Administrative Code § 8-107 provides that:

> 7. It shall be unlawful discriminatory practice: For an employer […] to discriminate against any person because such person has opposed any practices forbidden under this chapter […]

88.     Defendants unlawfully retaliated against Plaintiff for engaging in protected activities pursuant to the NYCHRL by failing to promote her on time, giving her negative reviews, permitting a hostile work environment where she was shunned, refusing to investigate additional complaints of retaliation, applying leave policies differently to her, denying bereavement, and

punishing her for common practices in the workplace.

89.    As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

90.    Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request a judgment against Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.; and the New York State Human Rights Law, New York State Executive Law, §§ 296 *et. seq*., and the New York City Human Rights Law, New York City Administrative Code §§ 8-107, *et. seq*.;

B.    Awarding damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

C.    An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

D.    An award of punitive damages, in an amount to be determined at trial;

E.    Prejudgment interest on all amounts due;

F.    An award of Plaintiff's reasonable attorney's fees and costs to the fullest extent permitted by law; and

G.    Such other and further relief to which Plaintiff is entitled, and/or as the Court may

deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: October 6, 2024              Respectfully submitted,
       White Plains, New York

                         **FILIPPATOS PLLC**

                         By: _____

                         Alfredo Pelicci
                         Ayo Alston-Moore
                         199 Main Street, Suite 800
                         White Plains, New York 10601
                         T./F: 914.984.1111
                         apelicci@filippatoslaw.com
                         aalstonmoore@filippatoslaw.com
                         *Attorneys for Plaintiff*

16